IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 16, 2016 at Knoxville

## STATE OF TENNESSEE v. DARRELL THOMAS GOOCH

**Appeal from the Circuit Court for Dyer County**
**Nos. C07-211A & 11-CR-420      R. Lee Moore, Jr., Judge**

_____

**No. W2016-00117-CCA-R3-CD  -  Filed September 30, 2016**

_____

The Defendant, Darrell Thomas Gooch, appeals as of right from the Dyer County Circuit Court's revocation of his probation and reinstatement of his effective ten-year sentence. The Defendant contends (1) that the trial court abused its discretion by revoking his probation because it relied on an additional probation violation introduced at the hearing that was not included in the violation warrant; (2) that the trial court ignored factors that mitigated his presence at the rape victim's apartment complex; and (3) that the four curfew violations, alone, were insufficient to revoke probation. Following our review, we affirm the trial court's revocation of the Defendant's probationary sentence and order of confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

James E. Lanier, District Public Defender; and H. Tod Taylor, Assistant District Public Defender, for the appellant, Darrell Thomas Gooch.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On December 11, 2007, the Defendant pled guilty in case number C07-211A to sale 0.5 grams or more of cocaine, a Class B felony, for which he received an eight-year sentence, with one year to be served in incarceration and the remainder on supervised probation. See Tenn. Code Ann. § 39-17-417. This sentence was run consecutively with "[a]ll prior sentences and/or parole revocations in the [S]tate of Illinois." Then, on May 30, 2014, in case number 11-CR-420, the Defendant pled guilty to attempted rape, a Class C felony, for which he received a sentence of ten years to be served on probation.[1] See Tenn. Code Ann. §§ 39-12-101, -13-503. The ten-year sentence was to be served concurrently with the prior eight-year sentence in case number C07-211A.

On September 1, 2015, the Defendant's probation officer filed a probation violation report listing both case numbers.[2] The probation officer wrote that the Defendant violated Rule 6 of his probation when he failed to obey curfew on four different dates. The officer further alleged that the Defendant, a registered sex offender,[3] violated Rule 12 of his probation in three ways: (1) two pornographic videos were found on the Defendant's phone; (2) the Defendant used his phone for a "sexually oriented purpose"; and (3) on August 9, 2015, the Defendant went to the last known residence of his victim.

At the hearing, the Defendant's probation officer, Charles Smith, testified that the Defendant had been out past curfew on four different occasions—July 26, 2014; February 14, 2015; February 28, 2015; and March 7, 2015. Due to the Defendant's status as a violent sexual offender, he was required to wear a Global Positioning System ("GPS") tracking device. Ofc. Smith confirmed that the Defendant was outfitted with such a device at the time he committed the attempted rape in case number 11-CR-420.

Ofc. Smith further testified that the Defendant was forbidden from visiting 600 Eaglewood Drive ("Eaglewood Apartments") as a condition of his probation because the rape victim lived there. On August 9, 2015, the Defendant's GPS device indicated he was at that location, and the Defendant had not obtained prior authorization from Ofc. Smith to be there. According to Ofc. Smith, a violation of this probationary condition was not contingent on whether the victim was actually present at the time of the Defendant's visit; however, Ofc. Smith was unsure if the victim still lived there in August 2015.

---

[1] His sentence in case number C07-211A was revoked for ninety-three days based upon his guilty plea to attempted rape.

[2] The Defendant's sentence in case C07-211A was set to expire on December 8, 2015.

[3] The Defendant had previously been declared a sex offender and required to register in the State of Illinois.

Describing another violation, Ofc. Smith testified about pornography he found on the Defendant's phone. Ofc. Smith conducted "a home check" with the Defendant and asked to view the phone that the Defendant used to call Ofc. Smith. The Defendant indicated the phone was on the table. Ofc. Smith retrieved the phone and found two pornographic videos on the phone that said "downloaded." According to Ofc. Smith, "[t]hey were the same videos, but the videos started at two different points." Ofc. Smith photographed the videos because he did not "have the right to seize [the Defendant's] phone[,]" and those photographs were entered into evidence.

On cross-examination, Ofc. Smith was asked about a letter signed by the site manager of Eaglewood Apartments indicating that the victim had moved from that location almost a year prior to the Defendant's presence. That letter was admitted as an exhibit.

Ofc. Smith agreed that the violation report was not filed until several months after the curfew violations occurred. Instead, Ofc. Smith initially decided to sanction the Defendant by lowering his curfew time. Ofc. Smith confirmed that he discussed these four incidences with the Defendant, and the Defendant never indicated that he missed curfew due to employment issues. Thereafter, Ofc. Smith testified that the Defendant "was instructed to go straight to work and . . . straight home" because of an incident in January 2015 when the Defendant had broken into the "medicine tray" of his fiancée, Barbara Thompson, while she was in the hospital. Although a police report was filed, the hospital decided not to pursue charges according to Ofc. Smith, "[s]o [he] took a sanction as in trying to lower his curfew to go straight to work and home, nowhere else." The Defendant objected, arguing that he had no notice that Ofc. Smith would testify about the medicine tray incident at the hospital. The trial court overruled the objection, concluding that the defense had opened the door for this line of questioning by asking "why [Ofc. Smith] had not filed a report[.]"

Ofc. Smith explained that the Defendant was living with his mother at the time of the four curfew violations and that he was trying to leave early before work to go see Ms. Thompson, which he did not have permission to do "because of the incident at the hospital." According to Ofc. Smith, the Defendant did not notify him of any transportation issues that caused him to violate his curfew restrictions.

Ofc. Smith reiterated that he took the phone with the pornography on it directly from the Defendant, disagreeing that he took it from Ms. Thompson, the Defendant's fiancée, although she was admittedly present at the time. Ms. Thompson explained to Ofc. Smith that it was she and one of her ex-boyfriends depicted in the video. However, Ofc. Smith played the video and confirmed that Ms. Thompson and her ex-boyfriend were not the subjects of the video; Ofc. Smith had personally supervised Ms. Thompson's ex-boyfriend. In response to Ofc. Smith's allegations, Ms. Thompson then

claimed her daughter was the female in the video. Ofc. Smith agreed that sometimes Ms. Thompson answered the phone when he called the Defendant.

Next to testify was probation officer Darryl McElrath, who was with Ofc. Smith when they went to the Defendant's house for "a home visit" on August 11, 2015. Ofc. McElrath testified that Ofc. Smith asked for the Defendant's phone shortly after they entered the residence. Ofc. McElrath further testified that the Defendant tried to hand Ofc. Smith a phone he had on his person, but Ofc. Smith asked to see the phone the Defendant usually called Ofc. Smith on. Ofc. McElrath testified that the Defendant pointed to a phone on the table, and Ofc. Smith picked up that phone. Ofc. McElrath watched the videos found on the phone along with Ofc. Smith, and he likewise believed them to be pornographic in nature. Furthermore, Ofc. McElrath likewise did not believe Ms. Thompson's claim that the videos contained images of Ms. Thompson and her ex-boyfriend. He confirmed that Ms. Thompson changed her story once they watched the videos, asserting then that it was her "daughter and her [daughter's] boyfriend" in the videos.

Ms. Thompson testified on behalf of the Defendant. She stated that the phone Ofc. Smith viewed belonged to her but agreed that it was the phone the Defendant "used as a contact phone" with "the probation office."

On cross-examination, Ms. Thompson confirmed that she had a misdemeanor conviction for simple possession of marijuana, but she had completed her probation on that charge. She disagreed that she acted as a confidential informant "[t]o work off [her] charges" related to "a drug problem." When asked if she was aware that the Defendant had written down her phone number as his contact number with the probation office and stated it was his number, Ms. Thompson replied that she did not "believe that."

Next, the Defendant testified that he did not download the pornographic videos and that the phone viewed by Ofc. Smith belonged to Ms. Thompson. He agreed that he used the phone to contact the probation office but claimed that he only did so because he lacked funds to buy his own phone. He asserted that he also used his mother's phone number as a contact number. The Defendant further stated that his son and Ms. Thompson's daughter had access to Ms. Thompson's phone, but he had asked Ms. Thompson not to let the children use the phone.

The Defendant testified that he missed curfew on the four dates listed in the violation report because he was borrowing Ms. Thompson's car. Although he did have regular use of Ms. Thompson's car to get to work, Ms. Thompson had doctor's appointments that required her to use the vehicle, so he "had to get that car back to her" when she needed it "or [he] wasn't gonna have no way back and forth to work." He claimed that he explained his predicament to Ofc. Smith. The Defendant also asserted that sometimes the GPS device "went off" because it was not set to the proper time zone.

4

The Defendant admitted he was at Eaglewood Apartments on August 9, 2015, but stated that he was visiting his twenty-seven-year-old daughter, whom he had not seen in twenty years. The Defendant confirmed that he was only there for thirteen minutes and was accompanied by Ms. Thompson and another woman. The Defendant asserted that he left promptly when Ofc. Smith called Ms. Thompson's phone and asked why the Defendant was at Eaglewood Apartments. The Defendant claimed that Ofc. Smith "said it would all be right" if they would just leave the premises and "meet somewhere else."

On cross-examination, the Defendant stated that, when he visited Eaglewood Apartments that day, he did not know whether the victim still resided there or not. The Defendant said that he "went to the opposite building way on the other end." He claimed that his daughter, who was from Illinois, did not know the area well and that he had to go to Eaglewood Apartments and get her because she was there visiting with a friend. The Defendant asserted that he did not know he was prohibited from visiting the apartments.

Furthermore, the Defendant said that he received permission to go see Ms. Thompson in the hospital following her surgery. However, he denied breaking into the medicine tray at the hospital during that visit and claimed that he did not get into "trouble" because he was searched and they did not find anything on his person.

As a registered sex offender, the Defendant was aware that he was not supposed to possess any kind of pornographic material, and he did not "keep a phone" for that reason. He denied knowing that Ms. Thompson's phone contained pornographic videos and claimed that he had "a government phone" of his own.

Ofc. Smith was recalled and confirmed that the Defendant had provided his mother's phone number as a contact number while he was living with her. However, once the Defendant moved in with Ms. Thompson at an approved address, he provided Ms. Thompson's phone number to Ofc. Smith. He also supplied the "government food stamp phone" later to Ofc. Smith as a contact number. According to Ofc. Smith, the Defendant never asserted that the phone in question belonged to Ms. Thompson until the hearing.

Ofc. Smith added that, on September 27, 2015, after the violation warrant had been filed, the Defendant's GPS tracking device indicated that he was again in the area of Eaglewood Apartments. Ofc. Smith phoned the Defendant and asked him what he was doing there on a Sunday, to which the Defendant replied that he was "over there all the time" for doctor's appointments. Ofc. Smith opined that the Defendant did not have such an appointment on a Sunday, and Ofc. Smith made a "contact note" describing the incident. The Defendant objected to this testimony, saying that he had no prior notice of the September 27, 2015 incident, but the trial court overruled the objection and entered the "contact note" regarding the September incident into evidence. Ofc. Smith clarified that he observed the Defendant driving north on Parr Avenue and the Defendant "had just

5

passed the Eaglewood Drive exit." The Defendant was not seen actually in Eaglewood Apartments, only in the area; however, Ofc. Smith stated that he had warned the Defendant that being in the area might set off his GPS device. When Ofc. Smith asked the Defendant why he was "in the area after a violation [had] been filed on him," the Defendant told Ofc. Smith that he was using Parr Avenue to get to Wal-Mart. Ofc. Smith opined that the September incident was proof that the Defendant was "gonna do what he want[ed] to do."

After finding that the Defendant had violated the terms of his probation, the trial court revoked the Defendant's probation and ordered him to serve the balance of his effective ten-year sentence in confinement. In so concluding, the trial court reasoned as follows:

> I think it is enough to violate him under the circumstances. The testimony of [Ofc.] McElrath and [Ofc.] Smith is more persuasive than that of Ms. Thompson or [the Defendant]. . . . He's got the curfew violations. And then we get to August and then we get to the things that finally breaks—the straw that breaks the camel's back. I think the situation is that [the Defendant] is simply not gonna be told what to do.

> Whether the victim was still living there or not is not the issue. [Special condition number 8 of Rule 12] requires him not to go around where the victim at any time was. The rule that [Ofc.] Smith read is very clear about that. He's not supposed to be there. The [c]ourt finds the testimony of [Ofc.] Smith and what's shown on the violation to be persuasive.

The Defendant perfected a timely appeal.

ANALYSIS

The Defendant contends that the trial court erred when it relied on his visit to Eaglewood Apartments on September 27, 2015, as a basis for revoking his probation because he did not have notice of the incident prior to the hearing. The Defendant further contends that there were mitigating factors to his presence at Eaglewood Apartments in August that the trial court ignored. Additionally, the Defendant contends that the four curfew violations were not severe enough to constitute a probation violation and should not have been used to revoke probation, noting that it was "undisputed that said curfew violations were because of a transportation issue to and from work." Lastly, he notes the trial court found no merit to the allegation of pornography downloaded on the phone, observing that the trial court made no mention of this allegation in its ruling.

6

The State responds that the four curfew violations alone were enough to support full revocation because the Defendant admitted the violations and the trial court fully accredited Ofc. Smith's testimony; accordingly, "all of his arguments are rendered irrelevant by the uncontested curfew violations[.]" The State also submits that other less restrictive measures besides confinement were attempted and failed, noticing that several violations occurred, including pornography possession and the Defendant's presence at the victim's last known address; that the Defendant's probation in case number C07-211A had previously been revoked; and that Ofc. Smith had already implemented sanctions by lowering curfew. We agree with the State that the evidence presented at the revocation hearing supports full revocation.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

The decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in the light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

In the present case, the trial court first found the testimony of Ofc. Smith and Ofc. McElrath to be more persuasive than Ms. Thompson's or the Defendant's. The trial court then stated that the four curfew violations and the Defendant's presence at Eaglewood Apartments in August were reasons for the revocation. The trial court noted that Rule 12 explicitly made clear that the Defendant was not to go to Eaglewood Apartments, regardless of whether the victim was still living there. The trial court also stated that the Defendant was "simply not gonna be told what to do." The trial court did not specifically rely on the possession of pornography in rendering its decision to revoke.

7

The Defendant admits that he violated curfew on these occasions without permission but contends that the transportation issues he experienced getting to and from work should excuse the four curfew incidents. The Defendant further notes that Ofc. Smith did not find them to be severe enough at the time to file a probation violation report. However, Ofc. Smith testified that he discussed these four incidences with the Defendant and that he had no notice that the Defendant was late for work because of transportation issues despite what the Defendant claimed at the hearing. Moreover, Ofc. Smith initially imposed sanctions by lowering the Defendant's curfew time and instructing him to go straight to and from work, which instructions the Defendant continued to disobey.

Moreover, the Defendant asserts that the trial court ignored several factors that mitigated his August appearance at Eaglewood Apartments: (1) he was only there for thirteen minutes to visit his daughter, whom he had not seen in twenty years, and he was accompanied by others; (2) the rape victim did not live there anymore; and (3) he left the complex promptly after Ofc. Smith's phone call. We agree with the trial court that the rules of the probation made it clear the Defendant was prohibited from being at Eaglewood Apartments. Ofc. Smith testified that the Defendant had not obtained prior authorization to be there and that a violation of this condition was not contingent upon the victim's actually being present at the time of the Defendant's visit. Additionally, based upon the Defendant's own testimony, he did not know that the victim no longer lived at Eaglewood Apartments when he visited.

The Defendant also argues that the trial court committed error by basing its revocation decision on the September 27, 2015 incident at Eaglewood Apartments because he did not have notice of the incident prior to the hearing. The trial court's ruling does not support that argument, remaining silent on the September incident all together. Additionally, because we conclude that the other bases relied upon by the trial court support revocation, we decline to address the Defendant's possession of pornography as the trial court did not specifically reference that violation in its decision to revoke. Although in so doing, we do not adopt the Defendant's assertion that trial court found no merit to this allegation.

The trial court found Ofc. Smith's testimony to be more persuasive than the Defendant's, and we defer to this credibility determination on appeal. We are unconvinced by the Defendant's arguments that the curfew violations and his presence at Eaglewood Apartments in August should be mitigated and not serve as proper bases for revocation. We agree with the trial court that the Defendant's behavior while on probation shows that the Defendant is "simply not gonna be told what to do." We conclude that the trial court did not abuse its discretion in revoking the Defendant's probationary sentence and ordering the balance of his effective ten-year sentence to be served in confinement.

## CONCLUSION

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE